LOLLEY, J.
| defendant, Craig Oliphant, appeals his sentence by the Fourth Judicial District Court, Parish of Morehouse, State of Louisiana. Following the vacating of his sentence and remand to the trial court by the Louisiana Supreme Court, Oliphant received a new sentence of 18 years at hard labor without benefit of probation, parole, or suspension of sentence and with credit for time served; a fine of $5,000.00 or, in default of payment, one year in jail consecutive to the principal sentence; and, completion of substance abuse and driver improvement programs. For the following reasons, we affirm Oliphant’s conviction and sentence.
Facts
Oliphant pled guilty to vehicular homicide, La. R.S. 14:32.1, on July 19, 2010. The underlying facts of that plea and this instant appeal are stated in detail, both in State v. Oliphant, 46,927 (La.App.2d Cir.03/21/12), 93 So.3d 603 (“Oliphant I”), and in State v. Oliphant, 2012-1176 (La.03/19/13), 113 So.3d 165 (“Oliphant II”). Thus, those facts will not be repeated herein, except to say that Oliphant, while under the influence of alcohol measuring a blood alcohol content of .247g%, ran his vehicle off the road, instantly killing Cravis Scott and injuring Fredrick Matthews. He was charged with vehicular homicide and hit-and-run driving.
Following his guilty plea to vehicular homicide, the trial court initially sentenced him to imprisonment for 25 years without benefit of probation, parole, or suspension of sentence, with credit for time served; to a fine of $10,000.00 or, in default of payment, to one year in jail consecutive to the principal sentence; and, to participation in a substance abuse program and a driver improvement program. Oliphant’s motion to reconsider sentence was granted by the trial court, with the court ordering that only the first 15 years be without benefit of probation, parole, or suspension of sentence; the rest of the sentence remained as previously decided.
|?In Oliphant I this court reversed the trial court’s sentence. After determining that vehicular homicide is not a crime of *145 violence, this court further determined that the trial court’s sentence was constitutionally excessive. The sentence was vacated and remanded to the trial court for resentencing, with instructions to impose a sentence of not more than 15 years at hard labor. Id. at 614.
Oliphant’s writ application was granted by the Louisiana Supreme Court, ultimately leading to its opinion in Oliphant II, which reversed this court’s decision. In Oliphant II, the court, noting a split in the trial and appellate courts, determined that vehicular homicide is indeed a crime of violence. Id. at 173. That being the case, the court recognized that the trial court’s original sentence of 25 years with 15 years of parole ineligibility violated La. R.S. 15:474.4(B)(1), which provides: “Notwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least eighty-five percent of the sentence imposed before being eligible for parole.” Id. at 174. The Oliphant II court concluded: “Thus, by operation of law, defendant must serve at least twenty-one years and three months of his twenty-five-year sentence before becoming eligible for early release, not fifteen years as the District Court ordered on reconsideration.” Id. In other words, Oliphant II determined that 15 years was less than the required 85% of the sentence imposed, violating La. R.S. 15:474.4(B)(1). Reversing Oliphant I, the Supreme Court vacated the sentence and remanded this matter to the trial court for resentencing.
|sOn remand from the Louisiana Supreme Court, the trial court took up the case again in a hearing on July 9, 2013.[1] At the hearing the trial court stated that it had considered the entire record, the pre-sentence investigation report, the Boykin hearing, the letters written on behalf of Oliphant, testimony from friends and family members, of both the victim and the defendant, everything else which was adduced at the original sentencing hearing, the rulings of this court and of the Louisiana Supreme Court, and the character, attitude, and social and criminal history of the defendant. The trial court noted the La.C.Cr.P. art. 894.1 sentencing factors from Oliphant’s first sentencing hearing and “adopted them by reference.” Oli-phant was sentenced to 18 years at hard labor without benefit of parole, probation, or suspension of sentence, with credit for time served; to pay a fine of $5,000.00 and all court costs or, in default of payment, to serve one more year in jail; and to attend a court-approved substance abuse program and a driver improvement program. The trial court again designated the crime as a crime of violence. After a denial of his motion to reconsider sentence, this appeal by Oliphant ensued.
Discussion
.In Oliphant’s first assignment of error, he argues that the trial court erred by imposing a sentence that exceeded the sentencing limitation set by this court in Oli-phant I. Specifically, he maintains that the trial court wrongly ignored Oliphant I when it resentenced him to 18 years at hard labor without benefits and a fine of $5,000.00. According to the defendant, although the Louisiana Supreme Court reversed the judgment of this court, the Supreme Court did so only to Lclassify the crime as a crime of violence and specify the amount of the sentence that must be *146 served without benefit of probation, parole, or suspension. He argues that Oliphant II did not comment on this court’s determination that 15 years of imprisonment was the maximum constitutional prison sentence for this crime. By only changing the classification of the crime to a crime of violence, argues the defendant, the Supreme Court left standing this court’s finding that the maximum sentence allowable for this offense is 15 years, and that 15-year limitation remains a controlling judgment in this case. We disagree.
Louisiana R.S. 14:32.1, addressing the crime of vehicular homicide, states:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle ... whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
[[Image here]]
B. Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years.... If the operator’s blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence.... The court shall require the offender to participate in a court-approved substance abuse program and may require the offender to participate in a court-approved driver improvement program.
Furthermore, and already noted, notwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least 85% of the sentence imposed, before being eligible for | ¿parole. La. R.S. 15:574.4(B)(1). Oliphant II conclusively determined that vehicular homicide is a crime of violence; thus, the defendant in this matter -will be required to serve at least 85% of his sentence before being eligible for parole.[2]
There is no doubt that this court’s opinion in Oliphant I was reversed by the Louisiana Supreme Court. In its opinion, the Supreme Court stated in the very beginning that it “reverse[d] the judgment of the Court of Appeal.” Oliphant II at 166. It stated in its conclusion that it “reversed the judgment of the court of appeal holding to the contrary” of the Supreme Court’s classification of the crime as a crime of violence. Id. at 174. The court stated in the decree at the end of its opinion that “the judgment of the Court of Appeal is hereby reversed.” Id. Although the conclusion of Oliphant II declared that the Supreme Court reversed this court’s prior judgment which “[held] to the contrary,” nothing in the Supreme Court’s ruling indicated that it found some parts of this court’s opinion not to be contrary to its own, or that the Supreme Court limited its reversal to only one part of this court’s opinion. Rather, most of the Supreme Court’s statements regarding its ruling *147 simply indicate that this court’s prior ruling is unqualifiedly reversed.
In addition to his argument that the trial court remains bound by Oliphant I, the defendant also argues that the sentence should be reduced so that it has the same total severity after classification as a crime of violence as it did before the classification. This argument fails for two reasons. First, as already stated, the Supreme Court wholly overruled this court, and the trial court is no longer bound by this court’s 15-year limitation in Oliphant I. Second, the denial of parole in La. R.S. 15:574.4(B)(1) demonstrates that the Louisiana legislature considers crimes of violence, along with some other classes of crimes, to be particularly egregious. | (/Therefore, upon the Oliphant II ruling that vehicular homicide is a crime of violence, the trial court did not err in enforcing a sentence which was more severe than the maximum sentence imposed in Oli-phant I when we classified the crime as nonviolent.
In his second assignment of error, Oli-phant argues that the trial court erred by imposing a sentence that is unconstitutionally excessive, especially in view of the holding of the Louisiana Supreme Court designating vehicular homicide as a crime of violence. Specifically, he argues that his sentence is nothing more than a needless infliction of pain and suffering; it shocks the sense of justice relative to the harm done; he does not deserve a very high sentence because he is not one of the worst offenders; and, he has no criminal record.
The trial court has wide discretion in imposing a sentence within minimum and maximum limits allowed by statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Young, 46,575 (La.App.2d Cir.09/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.03/09/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App.2d Cir.10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.09/21/11), 73 So.3d 1021, writ denied, 2011-2347 (La.03/09/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La.C.Cr.P. art. 894.1 and |7whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir.11/02/11), 77 So.3d 1052.
A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App.2d Cir.11/02/11), 77 So.3d 477. The defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App.2d Cir.09/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.03/30/12), 85 So.3d 113. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App.2d Cir.12/03/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/06/09), 21 So.3d 305. Maximum sentences are generally reserved for the worst offenses and offend *148 ers. State v. Taylor, 41,898 (La.App.2d Cir.04/04/07), 954 So.2d 804.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/02/11), 77 So.3d 1047.
Although this court vacated the trial court’s original sentence for exces-siveness, we determined that the trial court adequately weighed the sentencing factors of La.C.Cr.P. art. 894.1, and that Oliphant’s arguments to the contrary were unfounded. In the trial court’s explanation for the present sentence, it did not explain which of the La.C.Cr.P. art. 894.1 sentencing factors were considered, but reference to the factors was made repeatedly. Considering that the |strial court applied the factors in sufficient detail when the defendant was first sentenced and expressed deference to the factors when Oliphant was resentenced, the trial court did not err in applying La.C.Cr.P. art. 894.1 in calculating the new sentence.
As for constitutional excessiveness, although we previously ruled in Oli-phant I that the prior sentence was excessive, the Louisiana Supreme Court strongly implied in its subsequent opinion that the initial sentence was not excessive. Oliphant II at 174. Near the end of its opinion, the Oliphant II court noted that the trial court had imposed a 25-year sentence, and that upon reconsideration, the trial court ordered only the first 15 years be served before parole eligibility. Applying La. R.S. 15:574.4(B)(1), which requires that an offender convicted of a crime of violence serve at least 85% of his sentence, the court then stated that “by operation of law, defendant must serve at least twenty-one years and three months of his twenty-five-year sentence before becoming eligible for early release, not fifteen years as the District Court ordered on reconsideration.” Id. at 174 (emphasis added). In so stating, Oli-phant II implied that even a 25-year sentence, with 21 years and three months’ parole ineligibility, would be constitutionally acceptable. So considering and in light of Oliphant II, the defendant fails to show that his sentence is grossly disproportionate to his crime, that it is unjust, that it serves no purpose other than infliction of pain and suffering, or that any other reason exists for departure from the sentence which the trial court imposed and the Supreme Court implicitly approved.
lain resentencing Oliphant the trial court noted the following in its “reasons for re-sentencing”:
1. That there is an undue risk that during the period of a suspended sentence or probation that the defendant would commit another crime.
2. That the defendant is in need of correctional treatment or a custodial environment that can best be provided by his commitment to an institution.
3. That any lesser sentence than one that the court imposes in this case will deprecate the seriousness of the defendant’s crime.
Here, Oliphant faced a potential maximum sentence for vehicular homicide of 30 years. He received a midrange sentence of 18 years, 85% of which will be parole ineligible under La. R.S. 15:474.4(B)(1)— amounting to 15.3 years. Considering the severe consequences of his crime, one man was killed and another injured, we cannot say the sentence was excessive. While severely intoxicated, Oliphant hit these two men, and to compound his crime, he fled *149 the scene, claiming that he did not realize he hit them. He only returned to the scene after he was apprehended by police. Photos of his vehicle indicate the forcefulness of the impact. Notably, Oliphant benefitted from a plea bargain — his charge for hit-and-run driving was dismissed. He faced a maximum 10-year sentence on that charge.
Oliphant’s appeal counsel argues that his actions were “not much different from the typical vehicular homicide offense where a person who has had too much to drink, tries to drive home and ends up killing someone.” If Oliphant is the “typical,” run-of-the-mill offender of vehicular homicide, then his midrange sentence is likewise “typical” under the circumstances. So considering, we cannot say that Oli-phant’s punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict hopain and suffering. Thus, the sentence is not unconstitutionally excessive, and we conclude this assignment of error to be meritless.
Conclusion
For the foregoing reasons, the conviction and sentence of Craig Oliphant are affirmed.
AFFIRMED.

. Initially, Oliphant sought a continuance for the investigation of new evidence, and supported the motion with evidence that the surviving victim of the accident, Fredrick Matthews, stated on video that he had been struck by a long yellow pickup truck driven by a black man. Finding that the defendant already had admitted his guilt, among other factors, the trial court denied the continuance.

. Unless altered by another provision, a person otherwise eligible for parole and convicted of a first felony offense shall be eligible for parole consideration upon serving 33% of the sentence imposed. La. R.S. 15:574.4(A)(l)(a).